KERWIN v. MEAD et al.    (No. 316–3653.)

(Commission of Appeals of Texas, Section B. May 31, 1922.)

New trial &wkey;70—Granted where judgment was unsupported by testimony unless auditor's unverified report be considered.

New trial in a suit for a claimed balance under a settlement agreement on dissolution of partnership should be granted where judgment was based on an erroneous verbal report of the county auditor, under an incorrect assumption by the judge as to an agreement of the parties, whereas Rev. St. arts. 2124–2127, require the report to be verified, or, if the judge's statement to this effect on motion for new trial, shown by bill of exceptions, be disregarded, there was nothing left to support the judgment, and this though the party complaining did not, as he should, appear on the day announced for rendering judgment, and ask for further time to complete the audit.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by Roy Mead and another against W. J. Kerwin. Judgment for plaintiff was affirmed by the Court of Civil Appeals (229 S. W. 677), and defendant brings error. Reversed, and remanded for new trial.

Smith, Robertson & Robertson, of Dallas, and Scott, Brelsford & Smith, of Eastland, for plaintiff in error.

Frank Judkins, of Eastland, J. E. Ingram, of Ranger, and Nealon & McGill, of El Paso, for defendants in error.

McCLENDON, P. J.  This suit was brought by Roy and Homer Mead against W. J. Kerwin to recover a balance alleged to be due the plaintiffs from the defendant under a settlement agreement whereby an oil well drilling partnership theretofore existing between plaintiffs and defendant had been dissolved. The trial court rendered, and the Court of Civil Appeals affirmed, a judgment in favor of plaintiffs for $14,127.51, apportioned $5,707.15 to Roy Mead and $8,420.36 to Homer Mead.  229 S. W. 677.

The several grounds upon which it is urged that the trial court's judgment is erroneous depend for their proper solution upon two controlling questions, namely: First, whether the trial court's judgment is based upon an unverified verbal report of an auditor; and, second, whether independently of such report the evidence was sufficient to sustain the judgment. A clear understanding of the issues involved will probably be facilitated by a statement of the essential features of the controversy as near as may be in their chronological order. In making this statement the occurrences in the course of the trial are taken in the main from the testimony of the trial judge given under oath and upon his own motion in the hearing before himself of defendant's motion for a new trial.

On February 1, 1918, W. J. Kerwin, the plaintiff, was engaged in drilling oil wells in Eastland county under the business name of W. J. Kerwin Drilling Company, and was the owner of several rigs and tools and appliances used in connection with that business. On the date named he entered into an agreement with the plaintiffs Roy and Homer Mead, whereby the latter became interested in the business as partners under these stipulations: Kerwin was to have three-fourths interest in the profits, and the two Meads a one-eighth interest each. The tools of the concern were to be owned in the proportion named. The value of these tools was estimated at $18,781.50. One-eighth of this amount was agreed to be paid by each of the Meads to Kerwin out of their share of the profits in the business. The Meads were to receive $300 per month each and Kerwin $150 per month as salary. This agreement was verbal, but on March 1, 1919, it was reduced to writing in which it was stipulated that the profits of the Meads in the business as shown by the profit and loss account as of December 31, 1918, had discharged the amount due Kerwin, and that the Meads were then the owners of one-eighth interest each in the business. Some time about April, 1919, a further agreement was made by which the Meads were to require each an additional one-eighth interest in the business whenever their profits should amount to $6,000 each—one-half of the estimated value ($24,000) of additional tools which Kerwin had put into the business. This condition had been fulfilled by May 31, 1919, and on June 3d the agreement was evidenced by writing showing that after May 31, 1919, Kerwin was the owner of one-half and the Meads each of one-fourth of the profits except as to certain specified wells which had already been drilled, but not paid for. The partnership was finally dissolved on August 23, 1919, the terms of the dissolution being evidenced by written agreement of that date. Under this agreement Kerwin acquired the interest of the Meads in the tools of the concern, which were then of the agreed estimated value of $80,000, and Kerwin was to pay to the Meads one-half of that sum, receipt of which was acknowledged in the agreement. The books of the concern, which up to that time had been kept by one K. E. Jones, an expert public accountant at

Eastland, were to be turned over to Kerwin, who was to collect all the outstandings, pay all the debts, and account to the Meads for their proportionate interests in the net receipts. Kerwin, however, was not to be liable for failure to collect any of the outstanding accounts, but they were to be owned where not collected in proportion to the interests of the partners in the business. At or shortly after the time this contract was executed Kerwin paid to each of the Meads by check the sum of $14,000, Kerwin contending that he had never received from the Meads the $6,000 each which was coming to him under the agreement of June 3, 1919. Jones, presumably under the instructions of the Meads, declined to deliver the books to Kerwin until the latter should pay to the Meads the $12,000 coming to them under the dissolution agreement.

Suit was brought by the Meads on October 4, 1919. Some time prior to February, 1920, under order or direction of the trial court, the books of the partnership, with the exception of the ledger, were placed in the custody of the district clerk. These books were withdrawn under agreement of the parties on February 19, 1920, in order that each party might make out an income tax return. The case was finally set for trial on Monday, March 15, 1920. At the time the case was called for trial the books, except the ledger, were in Dallas, under the control of defendant's attorney, who stated to the court that he would have the books in court for the trial and would announce ready upon condition that the ledger would be supplied by plaintiffs and an opportunity given to defendant to have an audit made before the trial was concluded. Under this stipulation the trial proceeded, and the court announced that the parties might agree upon an auditor or each might have his own auditor, and the court would appoint the county auditor, and that all parties would have a fair opportunity to have the books audited before concluding the case. The trial then proceeded for about two days, and it developed that there was a sharp controversy as to whether the two $6,000 items referred to had been charged to the Meads and credited to Kerwin. Jones testified that this was done on June 1st. Kerwin testified that so far as he knew he had never received credit for this amount; that he had never examined the books, nor had them examined, but appeared to be willing to abide by what the books might show in this regard. At this juncture the trial appears to have been stopped by the court, who instructed the county auditor to examine the books and make a report to him, and the court announced that he would render judgment on the following Monday, which was March 22d. On March 22d the county auditor reported verbally to the district judge the balances in favor of the Meads, which were then embodied in the judgment rendered by the court. None of the parties or their representatives were in court at the time judgment was rendered. Two days later defendant's attorneys learning of the rendition of the judgment filed motion for a new trial, which was later amended. This motion was heard and overruled on April 22, 1920. At this hearing no one representing plaintiffs was present; the district judge conducting the cross-examination of the witnesses introduced by defendant. Upon this hearing the county auditor testified that at the time he reported to the judge he had not made any audit of the books; that the books were in the possession and use of defendant's auditor, and it was not practical for them to work on the books together; that he understood the judge expected to render judgment on March 22d, regardless of any report from him, and that he further understood that the only information the court desired from him was whether the books in fact showed that the two $6,000 items under the June 3d agreement had been charged to the Meads and credited to Kerwin, and that he reported to the court that these entries had been made. He also testified that since the judgment was rendered he had made an examination of the books, and that the amounts previously reported by him to the court were not correct; that from his examination the books showed that the Meads were indebted to Kerwin instead of Kerwin being indebted to the Meads. Defendant's auditor also testified upon this hearing, and from his testimony it appeared that his audit showed that the Meads were indebted to Kerwin. He testified that his audit took into account the two $6,000 credits which the books showed were entered on July 1st, and not on June 1st, as testified to by Jones. During the course of the hearing the judge of his own motion made a statement under oath and was cross-examined by defendant's counsel. From this statement the facts above detailed as to what took place at the trial regarding the books, their examination, and the appointment of the auditor were testified to by the judge. This statement is too long to set out in full, but, as bearing upon the question of the basis for the court's judgment, we make the following quotation:

"I announced that next Monday I would render a decision in the case. After the evidence was in, there was no judgment rendered, and I held the case up to get the report of the auditor for the plaintiffs and the auditor for the defendant and the county auditor's report. About the time (I presume that was the day I announced I would render the decision) the county auditor came up before the desk there and had some figures, memoranda of figures, on a piece of paper, and his statement to me was that 'we find that the defendant owes the plaintiffs these figures,' something over $14,000, and I asked the auditor if the auditor Jones (Jones was the auditor for the

plaintiffs), and I asked him whether or not Mr. Kerwin's auditor had agreed to the figures, and he said that he had. But he said this, to make it full, as far as I can recollect, that owing to some rules of his bureau or auditing company, that in court work like this he would not be allowed to sign the report, but orally he concurred in their conclusions. Mr. Kerwin's auditor did, and judgment was rendered, and those are the facts as they occurred, and I don't want to make any comment except state the facts."

While the trial judge was cross-examining the county auditor he propounded to him the following questions:

"How come you, if you found out and had those papers at the time, you reported to me one man was indebted and now you say the other man is indebted?"

"I want you to explain how you got this court into this hole you have gotten him into, coming up here personally and telling me what to do and I entered a solemn judgment on it.

"I want to know how you got this court into this hole by coming here in person and reporting to me and my entering this judgment on it and you coming here on these same papers and saying you were wrong?"

The only testimony upon the trial of the case which in any way tends to show the true state of the partnership accounts was that of the witness Jones, who kept the books. Jones testified that he finally balanced the books between the 15th and 25th of September, 1919, at which time they showed a balance in favor of Roy Mead of $6,-744.77 and in favor of Homer Mead for $9,-457.98, making in all $16,202.75. Jones had previously credited $6,000 each to the Meads and charged $12,000 to Kerwin to cover the balance due the former by the latter upon the partnership settlement. One of the plaintiffs testified that on November 7, 1919, Kerwin had paid to each of the Meads $1,151.16. If these amounts are deducted from the balances testified to by Jones as being credits to which the Meads were entitled at the time he closed the books, it would leave in favor of Roy Mead $5,623.61 and $8,306.82 in favor of Homer Mead, or a total of $13,900.43, which is $227.08 less than the trial court's judgment. Jones did not testify as to how he arrived at the amounts which he testified were owing the Meads when he closed the books in September. He does, however, show a balance sheet made by him on August 20, 1919, from which it appears that the balances in favor of the Meads were arrived at by charging the business with all bills receivable and crediting it with all bills payable, and presumably the figures given by him as to the status of the account upon closing the books in September was arrived at in the same way. Plaintiffs, however, would not be entitled to judgment based upon charging the business with bills receivable until those bills had been actually collected by Kerwin. The dissolution agreement so provided. There is no testimony other than that showing the payments by Kerwin to the Meads on November 7th as to whether any of these bills receivable had been collected since the trial balance of August 20th, at which time they amounted, according to Jones' figures, to $48,384.75.

It is manifest that the judgment of the court was rendered upon the verbal report made by the county auditor. We hardly see how any serious question could be raised upon that issue in the light of the sworn statement made by the trial judge upon the hearing of the motion for new trial and the questions he then propounded in his cross-examination of the county auditor. But, aside from these statements by the court, there is no other source, so far as the record shows, from which the amounts for which the court rendered judgment could have been obtained. The figures testified to by Jones, after deducting amounts admitted to have been paid subsequently, are over $200 less than the amount of the judgment. No one else gave any testimony upon which any conclusion could be based as to the amount, if any, owing by the defendant to plaintiffs. The testimony of the other witnesses was confined almost exclusively to the controversy as to what took place when the dissolution agreement was made with reference to Kerwin's holding back the $12,000 retention of the books by Jones, and the issue as to whether the amounts coming to Kerwin under the agreement of June 3d had been satisfied.

Our statutes which regulate the appointment of auditors (articles 2124 to 2127) require that the auditor's report shall be verified by his affidavit stating that he has examined carefully the accounts between the parties, and that his report contained a true statement thereof so far as the same has come to his knowledge. It is also provided that this report shall be admitted in evidence, but may be contradicted by evidence from either party where exceptions to it or to any of its items are filed before trial. It is clear that the verbal report made by the county auditor was not in any sense a compliance with the statute. It was not in writing, nor was it verified. Waiving the matter of exceptions before trial, which in this instance could not have been made because, among other reasons, the report was not given until after the trial was commenced, the parties to the suit should in any event have had a reasonable opportunity to object to it. The court appears to have acted upon the assumption that all the parties had agreed that the amounts stated by the county auditor to the court were the correct amounts to which the Meads were entitled. There is no testimony anywhere in the record to the effect that this assumption was correct. Neither the county auditor nor plaintiffs' auditor

so testified, and the assumption has for its only basis the statement of the judge to the effect that he was so told by the county auditor. The county auditor had no power to bind the defendant by any admission; he was not sworn as a witness upon the trial of the case; he made no verified report as auditor appointed by the court; and neither the statement of facts nor any minute upon the court's docket shows any report by him. There was therefore no basis upon which the court could render judgment upon the verbal report of the county auditor. It may be conceded that counsel for defendant were derelict in not being in court on Monday, March 22d, and asking further time to complete the audit. But this dereliction was not a warrant for the trial court to render a judgment without testimony to support it; nor did it authorize the judge to act upon an unverified verbal statement of the county auditor; nor is the omission in the testimony upon the trial strengthened by the evidence adduced upon hearing of the motion for new trial; for in that hearing the only evidence material to the issues in the case was to the effect that the trial court's judgment was erroneous; that the county auditor had acted upon a misapprehension as to his duties and had given a report based upon his understanding of what was required of him, which upon an examination of the books he had later found to be incorrect. We hardly see how anything could be more self-evident than that upon these matters being brought to the attention of the trial judge it was his plain duty to set the judgment aside and proceed with the case, giving all parties a reasonable opportunity to be heard.

What we have already said disposes of the question whether independently of the county auditor's verbal report the judgment finds basis in the statement of facts.

It is earnestly insisted by defendants in error that the statements made by the trial judge upon hearing of the motion for new trial cannot properly be considered in determining upon what the trial court based his judgment. The contention in this regard is that the judgment of the court imports verity, that every reasonable presumption should be indulged to support it, and that it should be permitted to stand if it has any support in the evidence. It is true there were no formal findings of fact or conclusions of law by the trial court. But we are not prepared to concede that a statement of the trial judge voluntarily made by him in open court, as shown by bill of exceptions approved by him, in connection with a hearing upon motion for new trial, calling in question a judgment rendered by him, is not properly a part of the record of the case in the trial court. We would not be warranted in closing our eyes to this solemn declaration by the judge uttered from the bench in a proceeding to correct an alleged erroneous ruling. The proper method by which to show what takes place upon hearing of á motion for new trial is by bill of exceptions. And such bill of exceptions is as much a part of the record of such hearing as the order of the court overruling the motion. The order is a pronouncement by the court upon what the bill of exceptions shows took place upon hearing of the motion, and in a sense the bill of exceptions is a part of the order itself. But, aside from this, if we disregard the statement of the judge that he based his judgment upon the verbal report of the county auditor, we have nothing left in the record upon which to support the judgment.

We conclude that the judgments of the district court and Court of Civil Appeals should be reversed, and the cause remanded to the former for trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.